## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MARION KINCHEN,

        Plaintiff,

vs.                         CASE NO: 2:05-cv-380-JES-SPC

JO ANNE BARNHART,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

_____This matter comes before the Court on the *Pro Se* Plaintiff Marion Kinchen's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on August 10, 2005.   The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #14) on January 20, 2006. The Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #15) on February 21, 2006.   Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

### FACTS

*Procedural History*

The Plaintiff previously filed for Title II and Title XVI benefits on January 28, 2000.  (Tr.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

16.)  The applications were denied initially and upon reconsideration. (Tr. 16.)  The Plaintiff did not

pursue further appeals of the Appeals Council's decision.  Before the Court now are the Plaintiff's

applications for Disability Insurance Benefits and Supplemental Security  Income (SSI) filed  on

October 24, 2001. (Tr. 349, 350-354.)   The applications were denied initially and upon

reconsideration and a request for hearing was timely filed.  (Tr. 16, 40.)  A hearing was held before

the Honorable J. Richard Stables, Administrative Law Judge (ALJ) on February 10, 2004. (Tr. 367-

398.)  The ALJ issued an unfavorable decision on March 8, 2004.  The Plaintiff filed a Request for

Review of the hearing decision by the Appeals Council.  The Appeals Council denied review on June

23, 2005.  (Tr. 5-7.)  Having exhausted all administrative remedies, the Plaintiff timely filed a

Complaint with this Court.

## *Plaintiff's History*

The Plaintiff was born on August 15, 1951, and was fifty-two (52) years old at the time of

the hearing. (Tr. 17.)  The Plaintiff has a ninth grade education and has a past relevant work history

as a certified nursing assistant, companion/sitter, and assembler.  (Tr. 17.)  The Plaintiff alleges an

onset disability date of September 15, 2001 due to arthritis, stress incontinence, hypertension, back

pain with bending, lifting or pulling, spinning in the head, chest pain with lifting or reaching, chronic

obstructive pulmonary disease (COPD), anemia, and left eye problems.  (Tr. 17.)

## *Medical and Psychological History*

The Plaintiff was seen at the Ruth Cooper Center between June 2, 2000, and September 5,

2001, for a long history of anxiety and panic attacks. (Tr. 130-145.)  The Plaintiff was diagnosed with

panic disorder and agoraphobia, adjustment disorder and depression. (Tr. 130.)

The Plaintiff was evaluated by Joseph J. White, Ph.D , on January 24, 2002, upon referral by

2

the Office of Disability Determinations. (Tr. 146-147A.) Dr. White noted that Plaintiff went to the

ninth grade and was in special education classes. (Tr. 146.) Dr. White noted that the Plaintiff's

current medication included Prozac, blood pressure medications and an Albuterol inhaler. (Tr. 147.)

Dr. White observed the Plaintiff to be dressed appropriately, had good personal hygiene, with normal

speech and clear and coherent thoughts. (Tr. 147.) Judgment and insight were considered to be fair

and her IQ was estimated to be in the low average range. (Tr. 147.) Upon examination, Dr. White

diagnosed the Plaintiff with Adjustment Disorder with depressed mood and panic disorder with

agoraphobia. (Tr. 147.)

The Plaintiff was seen by Dr. Patrick A. Ijewere for a consultative examination on February

19, 2002. (Tr. 162-175.) The examiner noted that Plaintiff had COPD. (Tr. 162.) The examiner

noted the Plaintiff complained of shortness of breath (SOB) with walking more than 2 blocks and

intermittent lower back pain. (Tr. 162.) There was no chest pain or SOB but she complained of a

spinning sensation of vertigo lasting 30 seconds. The Plaintiff further complained of bladder

incontinence daily needing evaluation. (Tr. 164.)

The Plaintiff was treated by Asif Choudhury, M.D., a gastroenterology specialist, between

May 1, 2002, and May 17, 2002. (Tr. 207-212.) Dr. Choudhury conducted an

esophagogastroduodenoscopy[2] (EGD) procedure on May 17, 2002. (Tr. 207-210.) The pre

procedure diagnosis was chronic gastritis, microcytic anemia and chronic constipation. (Tr. 207-212.)

---

[2]Esophagogastroduodenoscopy is defined as a procedure that enables the examiner (usually a Gastroenterologist) to examine your esophagus (swallowing tube), stomach, and duodenum (first portion of small bowel) using a thin flexible tube that can be looked though or seen on a TV monitor. Http://www.medicinenet.com/endoscopy/article.htm Accessed on July 11, 2006.

Dr. Choudhury's post operative diagnosis was mild gastritis, normal duodendum and no upper GI source found for bleeding.  (Tr. 209.)

The Plaintiff was treated by Joseph Salaz, M.D., between October 30, 1997,  and May 24, 2002, for vertigo, hypertension, rhinitis, anemia, arthralgias, acute tendinitis of the lower back , osteoarthritis and COPD. (Tr. 213-230.)  The record also documents the Plaintiffs use of anxiety and depression medication. (Tr. 219, 221.)

The Plaintiff was seen at Lee Memorial Health Systems between February 2, 1999, and June 5, 2002, for chronic sinusitis and chest pain. (Tr. 231-253.) On February 4, 2002, an echocardiograph revealed well preserved left ventricular systolic contractility with normal ejection fraction of 80%, concentric left ventricular hypertrophy, mild aortic insufficiency, and mild tricuspid regurgitation. (Tr. 235.) Dr. Salaz' impression was normal sinus rhythm and no episodes of high degree AV block.  (Tr. 233.)

The Plaintiff was seen twice at the Southwest Florida Regional Medical Center Emergency Room between October 26, 2002, and July 25, 2003, for hypertension. (Tr. 276-285.) .The Plaintiff was treated by Richard Delorio, M.D., between September 9, 2003, and September 24, 2003. (Tr. 286 - 289A.)   On September 9, 2003, the Plaintiff was evaluated for bilateral hip pain and low back pain. (Tr. 287.)  The Plaintiff described occasional radiation of pain all the way down her left leg to the ankle and occasional bilateral numbness in her legs and feet. (Tr. 287). She further complained of paresthesias in the thumb, index and long fingers of her hands bilaterally. (Tr. 287.) Impression included chronic low back pain with left lumbar radicular pain and probable carpal tunnel syndromes bilaterally. (Tr. 287.) On September 24, 2003, it was noted that an MRI, from August 5, 1998, demonstrated disc degeneration with left lateral disc bulging at L4 - 5 and also central disc bulging

4

with disc degeneration to a mild degree at L5-S1. (Tr. 286.)  It was further noted that Plaintiff was still complaining of intermittent numbness in the median distribution of the fingers in her hand and that she had persistent left lumbar radicular pain. (Tr 286.)

The Plaintiff continued to be seen by Joseph Salaz, M.D , between June 6, 2002, and December 10, 2003, for headaches, COPD, irritable bowel syndrome, allergic rhinitis, vertigo, back pain, bilateral hip bursitis, hypertension, hyperlipidemia, onychomycosis and dermatitis. (Tr. 290-309.)

The Plaintiff was seen at Lee Memorial Health Systems between June 7, 2002 and February 26, 2003. (Tr. 310-324.)  She was seen for chronic shoulder pain.  (Tr. 314, 319.)  Impression included diffuse arthralgia, intermittent muscle spasms, spondylosis of the thoracic spine and history of depression/anxiety.  (Tr. 316, 319.)  The Plaintiff was also seen for bilateral knee and back pain. (Tr. 321.)

The Plaintiff was seen at the Ruth Cooper Center between, February 4, 2002, and December 8, 2003. (Tr. 325-348.) On February 4, 2002, diagnostic impression included major depression. (Tr. 347.)  On December 8, 2003, Dr. Lidia Okonski opined Plaintiff's GAF score to be  55. (Tr. 347.) The Plaintiff continued with Wellbutrin 75 mg and stated that it does not make her tired and controlled her depression.  (Tr. 326.)  The Plaintiff continued to be treated for diagnosis of major depressive disorder. (Tr. 326-345.)

<u>*Administrative Law Judge's Decision*</u>

Upon consideration of the record, the ALJ found that the Plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act, but was insured for benefits only through December 31, 2002.  (Tr. 23.)

5

The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 23.)  The ALJ determined that the Plaintiff's chronic obstructive pulmonary disease (COPD), polyarthralgias, acute nonspecific arthritis, low back pain, bilateral bursitis in hips, and spondylosis of the thoracic spine are considered "severe" based on the requirement in the Regulations. However, these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 23.)  The ALJ determined that the Plaintiff's allegations regarding the severity of her symptoms and resulting functional limitations are not totally credible.  (Tr. 23.)  The ALJ concluded that the Plaintiff had the residual functional capacity to perform medium work. (Tr. 23.)  The ALJ further concluded that the Plaintiff was unable to perform any of her past relevant work.  (Tr. 23.)  The ALJ found that the Plaintiff is considered an individual closely approaching advanced age and with limited education. (Tr. 23.)  The ALJ found that the Plaintiff has no transferable skills from any past relevant work.  (Tr. 23.)  The ALJ concluded that the Plaintiff has the RFC to perform a full range of light work. (Tr. 23.)  The ALJ further found that based upon the exertional capacity for medium work, and the Plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.25.  (Tr. 23.)

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the

sequential inquiry described in the regulations[3].  <u>See</u> 20 C.F.R. §§ 404.1520(a), 404.920(a).  The

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §

405(g).  Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560

(11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982)); <u>Richardson</u>, 402

U.S. at 401.

 Where the Commissioner's decision is supported by substantial evidence, the District Court

will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v.</u>

<u>Sullivan</u>, 937 F.2d 580, 585 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.3d 1356, 1458 (11th Cir.

1991).  The District Court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>Lowery v. Sullivan</u>, 979 F.2d 835,

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
  *Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
  *Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
  *Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
  *Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
  *Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  <u>See</u> 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237-40 (11th Cir. 2004); <u>Foote v. Chater</u>, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B.  Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. <u>Jackson</u>, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); <u>Davis</u>, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards).  Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. <u>Falcon v. Heckler</u>, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. <u>Jackson</u>, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. <u>Jackson</u>, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to  be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.)

that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative

so that there is a reasonable possibility that it would change the administrative result; and 3.) there

is good cause for failure to submit the evidence at the administrative level. Jackson, 99 F.3d at 1090 -

92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).   With a

sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not

enter a final judgment until after the completion of remand proceedings.[4] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe,

making the claimant unable to do his or her previous work, or any other substantial gainful activity

which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff argues that the ALJ erred by (1) not finding Plaintiff's anxiety/depression,

gastritis and hypertension to be severe impairments and (2) by not eliciting the testimony of a

vocational expert (VE) since the (Plaintiff) suffers from non-exertional impairments.  The Plaintiff

---

[4]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

further argues that the ALJ's application of the incorrect Medical Vocational Rule was reversible error.  The Commissioner argues that the ALJ's decision is supported by substantial evidence and therefore, should be affirmed.  The Commissioner further contends that, despite the ALJ's incorrect citation number, the ALJ properly made a finding of fact as to the Plaintiff's functional limitations and is supported by substantial evidence.

### (1) Whether the ALJ Erred by Not Finding Plaintiff's Anxiety/Depression, Gastritis and Hypertension to be Severe Impairments

The Plaintiff argues that the ALJ erred by failing to find her anxiety/depression, mild gastritis, hypertension and dizziness with vertigo component, and dermatitis as severe impairments.  The Defendant argues that substantial evidence supports the ALJ's determination regarding the Plaintiff's non-severe impairments.

The ALJ is to "consider the medical severity of the [Plaintiff's] impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."  Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)).  At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments.  Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005).  An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to

supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work

setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)).  Where a claimant has alleged several impairments,

the Commissioner has a duty to consider the impairments in combination and to determine whether

the combined impairments render the claimant disabled. Jones v Department of Health and Human

Services, 941 F.2d 1529, 1533 (11th Cir. 1991).   An ALJ properly considers the Plaintiff's

impairments in combination if he states that the Plaintiff does not have an impairment, or combination

of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity.

Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

In making his determination at Step two, the ALJ evaluated the medical record and

determined that the Plaintiff's subjective allegations of anxiety/depression, mild gastritis, hypertension

and dizziness were not severe within the meaning of the regulations.  (Tr. 20.)  The ALJ explains as

follows:

> The medical evidence also indicates the (Plaintiff) has subjective allegations of
> anxiety/depression, mild gastritis, hypertension and dizziness with vertigo component,
> and dermatitis, but there is no evidence to conclude that these impairments cause any
> significant functional limitations.  The evidence does support the (Plaintiff's)
> allegations of hypertension and nonspecific dizziness with vertigo components.
> However, the medical evidence also indicates her hypertension is stable and controlled
> with medications, there is no evidence of any end-organ damage, and her dizziness
> and vertigo problems are treated with medications (Exhibit C-4F and C-14F). The
> (Plaintiff) has complaints of a history of bladder incontinence, but an endoscopy
> showed only "mild" gastritis and normal duodenum (Exhibit C-7F).  The medical
> evidence supports (Plaintiff's) allegations of a history of dermatitis, but the evidence
> also indicates it has been treated with medications and all rheumatoid tests were
> negative in August 2003 although evidence of systemic process was questionable
> (Exhibit C-14F.)  (Tr. 20.)

Here, the ALJ clearly articulates his reasoning for finding the Plaintiff's impairments non-severe.

Although  the  Plaintiff  argues  that  the  ALJ  did  not  consider  the  medical  record  of  Dr.  Asif

Choudhury, the ALJ cites directly Dr. Choudhury's treatment records where an esophagogastroduodenoscopy and a biopsy were performed. (Tr. 207-210.)   As the ALJ points out, the results of the testing revealed only mild to moderate chronic inflammation and a normal duodenum resulting in an assessment of "mild" gastritis and a normal duodenum. (Tr. 207, 209.) The objective medical evidence does not support a finding of disabling impairments and the ALJ clearly articulated his finding.

The Plaintiff further contends that the ALJ should have found the Plaintiff's hypertension a "severe" impairment.  The Plaintiff was diagnosed with hypertension by her treating physician, Dr. Joseph Salaz. (Tr. 216, 219, 220.)  However, Dr. Salaz treated the Plaintiff conservatively with medication. (Tr. 215, 219, 220.)  Although the Plaintiff was treated for hypertension on October 26, 2006, when she presented to the Southwest Florida Regional Medical Center complaining of "feeling woozy", the Plaintiff's cardiovascular, respiratory, gastrointestinal, and neurological examinations were all normal. (Tr. 280-281.)  The Plaintiff was then released in good condition. (Tr. 281.)  When the Plaintiff presented to the emergency room for a second time on July 25, 2003, it was because she mistakenly took a second dose of her medication which caused an increase in blood pressure and a feeling of being woozy. (Tr. 277.)

While the record shows that the Plaintiff was treated for hypertension, the record does reflect that the Plaintiff's hypertension was stable, treated with medication, with no end organ damage. (Tr. 20.)  Clearly, the record does not support a finding that the Plaintiff was limited or restricted in her ability to work due to hypertension. The Plaintiff's mere allegation that she has an impairment without providing any medical support is not sufficient. Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(c)) stating claimant must provide medical evidence showing that she has an impairment

and how severe it is during the time the claimant says she is disabled.    The objective medical record does not support the Plaintiff's claim of disabling impairments, therefore, the impairments were properly found to be not disabling and non-severe.

With regard to the Plaintiff's claim of disabling anxiety and depression, the ALJ considered the medical evidence, the opinions of Dr. White, the testimony of the Plaintiff and the Plaintiff's daily activities.    The ALJ explained as follows:

> The evidence does establish the claimant has been treated for anxiety and depression and has been diagnosed with major depressive disorder, but the medical evidence also indicates that it is under control with medications and Dr. Joseph White (Exhibit C-2F) opined that the claimant's anxiety/depression was not considered to be a barrier to her overall functioning.  In addition, the claimant reported normal activities of daily living such as: cooking, driving, doing household chores, shopping, visiting family and friends, attending church, working jigsaw puzzles, reading the Bible daily, and managing her own funds (Exhibit C-2f and testimony).  At the hearing, the claimant also testified that she gets stressed when she is unable to do things she used to do or when she is rushed, but her medications help to calm her.  Moreover, during the claimant's course of treatment at Ruth Cooper Center, her treating psychiatrist assessed her with Global Assessment of Functioning ratings ranging from 55 to 65 (Exhibit C-16F).  According to the Diagnostic and Statistical Manual of Mental Disorder, Fourth Edition (DSM-IV), these ratings indicate moderate to mild symptoms or difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships.  (Tr. 20.)

The ALJ recognizes the Plaintiff's treatment and diagnosis, however, he clearly articulates his reasoning that the medical record does not support a finding of disabling depression.  The ALJ first points to the opinion of Dr. White.  (Tr. 146-147A.)  Dr. White examined the Plaintiff upon referral by the Office of Disability Determinations.  (Tr. 146.)  Dr. White observed the Plaintiff to have a flat, depressed affect but was open and cooperative.  (Tr. 147.)  Judgment and insight were fair and her IQ was estimated in the low range but she was well oriented to time and place, showed good attention, concentration and adequate short term memory.  (Tr. 147.)

The ALJ also took note that Dr. White addressed the Plaintiff's ability to maintain daily activities, such as, driving, cooking, managing her own funds and found that her current level of depression is not considered a barrier to her overall functioning. (Tr. 147A.)  While the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to her ability to perform certain tasks. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). Norris v. Heckler, 760 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination).  Although the Plaintiff was found by Dr. White to have Adjustment Disorder with Depressed Mood and Panic Disorder Without Agoraphobia, the Plaintiff was treated with medication that, by her own testimony, helps when taken properly.  (Tr. 379.)

The ALJ also addresses the Plaintiff's treatment by the Ruth Cooper Center. (Tr. 130-145; 325-348.)  Those treatment records indicate that during the course of treatment with Susan Workman, MA, LMHC, the Plaintiff's anxiety attacks and/or crying spells seemed to decrease through therapy and with medication. (Tr. 133.)   As the ALJ discusses, the Plaintiff was given a GAF rating of 55-65 indicating only a mild to moderate impairment. The Plaintiff was found to be doing well and it was decided to not continue monthly therapy and the Plaintiff would call as needed. (Tr. 132.)  The ALJ finally concluded, therefore,  "as the evidence fails to show any significant functional limitations or restrictions on the (Plaintiff's) ability to work are caused by the mild

15

gastritis, hypertension and dizziness with vertigo component, dermatitis, and anxiety/depression, they

are considered non-severe pursuant to 20 CFR 404.1521(a) and 416.921(a)." (Tr. 20.)  Clearly, the

ALJ supported his determination  with substantial evidence and where the Commissioner's decision

is supported by substantial evidence, the District Court will affirm.  Edwards, 937 F.2d at 585 n.3.

### (2) Whether the ALJ erred in Relying on Grids Rather than Eliciting Vocational Expert Testimony Regarding the Plaintiff's Non-Exertional Impairments

In this case, the ALJ found that the Plaintiff could not meet the demands of her past

relevant work.  (Tr. 22.)  Once the ALJ finds that a claimant cannot return to his or her prior

work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559

(11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must

develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558;

Allen v.Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met

through exclusive reliance on the Medical-Vocational Guidelines (grids). Foote, 67 F.3d at 1558.

Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an

exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart

P,Appendix 2, § 200.00 (e); Foote, 67 F.3d at 1559 (citing Heckler v. Campbell, 461 U.S. 458,

103 S.Ct. 1952, 76 L. Ed. 2d 66 (1983) (holding that exclusive reliance on the grids is

appropriate in cases involving only exertional impairments, impairments which place limits on an

individual's ability to meet job strength requirements). Exclusive reliance is not appropriate

"either when a claimant is unable to perform a full range of work at a given residual functional

level or when a claimant has a non-exertional impairment that significantly limits basic work

skills." Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Foote, 67 F.3d at 1559; MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Foote, 67 F.3d at 1559.

The Plaintiff argues that the ALJ erred by relying on the Vocational Grids instead of eliciting the testimony of a vocational expert to consider the Plaintiff's non-exertional impairments of pain, anxiety and depression.  The Defendant argues the ALJ's conclusion that the Plaintiff did not suffer from non-exertional impairments was based upon substantial evidence. Therefore, the ALJ's use of the Grids was proper.  Thus, the Court must address whether or not the ALJ sufficiently addressed the Plaintiff's non-exertional claims and then whether or not the ALJ should have called a VE or relied solely on the grids.

### (a) Pain Analysis

Pain is a non-exertional impairment. Id. at 1559. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably

be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must

consider all of a claimant's statements about her symptoms, including pain, and determine the

extent to which the symptoms can reasonably be accepted as consistent with the objective

medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce

the alleged pain, the ALJ must apply the Eleventh Circuit's three-part "pain standard." Foote, 67

F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2)

objective medical evidence that confirms the severity of the alleged pain arising from that

condition or (3) that the objectively determined medical condition is of such a severity that it can

be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223

(11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by

objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an

individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423

(d)(5)(A).

The ALJ stated in his decision:

> [i]n reaching conclusions about claimant's residual functional capacity, the
> undersigned has also considered the claimant's own subjective allegations and finds
> them generally credible as to the *nature* of the symptoms, but not fully credible as to
> the severity of the symptoms or as to resulting limitations in light of the objective
> medical evidence. Consideration is also given to the medical records in October 2002
> and November 2002 that reflected that claimant did not demonstrate pain on her
> physical examinations (Exhibits C-15/7 and C-15/10). (Tr. 21.)

In this instance, the ALJ failed to clearly articulate why he found the Plaintiff's subjective pain

complaints not credible. The ALJ simply states that while he believes the Plaintiff has the claimed

18

symptoms, he does not believe they are as severe as she claims. As such, the ALJ did not follow the Eleventh Circuits pain credibility analysis in making his determination.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). Since, the ALJ failed to clearly articulate why he found the Plaintiff's pain symptoms were not as severe as she claimed, it is respectfully recommended that the case be remanded to the Commissioner for a proper pain analysis.

### (b) Mental Impairments

In support of his determination, the ALJ lent great weight to the State Agency consultants and physicians who opined that the Plaintiff's mental impairments were not severe. (Tr. 181.) In his decision the ALJ wrote:

19

> [t]he evidence does establish the claimant has been treated for anxiety and depression and has been diagnosed with major depressive disorder, but the medical evidence also indicates that it is under control with medications and Dr. Joseph White (Exhibit C-2F) opined that the claimant's anxiety/depression was not considered to be a barrier to her overall functioning. In addition, the claimant reported normal activities of daily living such as cooking, driving, doing household chores, shopping, visiting family and friends, attending church, working jigsaw puzzles, reading the Bible daily, and managing her own funds (Exhibit C-2F and testimony). At the hearing, the claimant also testified that she gets stressed when she is unable to do things she used to do or when she is rushed, but her medications help calm her. Moreover, during the claimant's course of treatment at Ruth Cooper Center, her treating psychiatrist assessed her with Global Assessment and Functioning ratings ranging from 55 to 65 (Exhibit C-16F). According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), these ratings indicate moderate to mild symptoms or difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. (Tr. 20.)

Clearly, the ALJ discussed the medical evidence as it related to the Plaintiff's underlying mental conditions and determined that the medical records did not reflect sufficient reasoning for the Plaintiff's claim of disabling mental impairments. Since the medical evidence did not support the Plaintiff's mental impairment claim, the ALJ found the Plaintiff was not disabled due to mental impairment. (Tr. 17.) Because, the ALJ supported his mental impairment determination with substantial evidence, that decision should not be disturbed by the Court. Hale, 831 F.2d at 1012.

Therefore, the Court concludes that the ALJ properly discounted the Plaintiff's mental impairment claims. Nevertheless, the respectfully recommends that the case should be remanded for proper consideration of the Plaintiff's subjective pain complaints and for consideration by a VE since no consideration was given to the non-exertional pain impairment during the original hearing.

### (3) Whether the ALJ's Application of the Incorrect Medical Vocational Rule was Error

The Plaintiff then argues that the ALJ improperly applied the incorrect Medical Vocational

20

Rule to the Plaintiff.  The Defendant concedes that the ALJ cited the wrong Rule number,

however, the ALJ applied the correct legal standard and used the appropriate terminology.

Therefore, although the ALJ should have found the Plaintiff "not disabled" under Rule 203.18, the

citation of the incorrect Rule number was harmless error.

Upon consideration of the Plaintiff's age, education and vocationally relevant past work

experience, the ALJ classified the Plaintiff to be an "individual closely approaching advanced

age", with limited education, and has no transferable skills from any past relevant work.  (Tr. 22).

20 C.F.R. §404.1563 and 416.963.  Given the Plaintiff's RFC and vocational profile, the ALJ

found the Plaintiff to be "not disabled" as directed by the Medical Vocational Rule 203.25.  (Tr.

22).

Rule 203.00 pertains to the maximum sustained work capability limited to medium work

as a result of severe medically determinable impairment(s).  20 C.F.R. §404, Subpt. P. App. 2,

§203.00.  The functional capacity to perform medium work includes the functional capacity to

perform sedentary, light, and medium work.  Approximately 2,500 separate sedentary, light, and

medium occupations can be identified, each occupation representing numerous jobs in the national

economy which do not require skills or previous experience and which can be performed after a

short demonstration or within 30 days.  20 C.F.R. §404, Subpt. P. App. 2, §203.00(a).  The ALJ

determined that the Plaintiff was not disabled based upon the vocational profile as direct by

§203.25.  However, §203.25 refers to a "younger individual" which denotes an individual age 18

through 49.  As noted by the ALJ in his decision, the Plaintiff was 52 years old during the date of

the decision which was considered a "person closely approaching advanced age" with an RFC of

medium work.  Despite the contradiction, the ultimate findings of fact as made by the ALJ were

consistent to the extent that those findings would not change if he cited the correct Rule number. The ALJ applied the correct legal standard and the Court finds that the ALJ committed harmless error by citing the incorrect number.  When an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.  Diorio vs. Heckler, 721 F.2d 726, 728 (11th Cir. 1983). Therefore, the Plaintiff's argument lacks merit.

Accordingly it is hereby respectfully

**RECOMMENDED:**

The Decision of the Administrative Law Judge should be **REMANDED** for Further Consideration by an ALJ of the Plaintiff's Subjective Pain Complaints and for Review by a Vocational Expert.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this _ 7th _ day of September, 2006.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record

22